JOHN HORNER *vs.* DEN EX DEM. ROBERT B. LEEDS.

1. Instrument held to be a lease, and not a conveyance in fee. Where the intention of the parties can be gathered from the whole instrument, that intention must govern the construction.

2. The duration of a term, if not definitely expressed in a lease, may be fixed by reference to collateral or extrinsic circumstances.

3. Where a lease is for a term determinable upon the abandonment of the manufacture of salt by the lessees, and they do abandon the manufacture, the abandonment being their own act, they are not entitled to notice to quit.

4. A tenant is not permitted, in an action of ejectment brought against him, to deny the title of him under whom he claims.

5. He may show that the landlord has sold his interest in the premises; but the testimony of a witness that the landlord told him, the witness, so, is not competent to prove such sale.

This was an action of ejectment, brought by Robert B. Leeds against John Horner, to recover possession of a tract of land on Absecom beach, in the county of Atlantic. The case was tried before Justice Elmer, in the Atlantic Circuit, at the April term, 1854, and a verdict and judgment rendered for the plaintiff. A writ of error was brought by the defendant, removing the case into this court.

The plaintiff below claimed title through Jeremiah Leeds, and, on the trial, proved his title by several surveys and deeds of conveyance, running back to the year 1695.

He also proved possession, by himself and those under whom he claimed, since the year 1783.

The counsel for the defendant offered to prove, by one James Baker, that since the commencement of this suit, witness went to said Robert B. Leeds, for the purpose of purchasing the whole or a part of the property in controversy, and said Leeds told witness that he would not sell it to him, for he had already sold it to William Moore, which evidence was overruled.

The counsel for the defendant then, after examining several witnesses, gave in evidence a certified copy of an instrument under seal, dated April, 1st, 1816, executed by

Jeremiah Leeds to John Blake, and acknowledged and recorded in the coutny of Gloucester.

It also appeared in evidence that, on the 12th of April, 1816, Blake assigned his lease to the Absecom Salt Manufacturing Company, and by an agreement made with the company, dated April 30th, 1816, became manager of the works; and the dwelling house to be built was leased to him from year to year, until 1847.

Under an agreement, made March 20th, 1847, the defendant Horner, got possession, and became manager of the works. The manufacture of salt was continued to the close of the year 1849, when it was abandoned, and has not since been recommenced.

The defendant, John Horner, claimed title, under the lease from Jeremiah Leeds to Blake, to six acres of the tract in dispute, and the main question in the case, and upon which it turned, was the construction of this lease.

The plaintiff below insisted that it was a lease of land for a particular purpose, and determinable without notice when the land ceased to be used for the purpose intended.

The defendant, Horner, contended that it was a conveyance in fee.

The case was argued before the CHIEF JUSTICE and Justices OGDEN and POTTS, by *W. Halsted*, for plaintiff in error, and by *Woodhull* and *Browning*, for defendant.

*Halsted*, for plaintiff in error.

The material question in this case is, whether lease is of such a nature as to authorize plaintiff to sue without notice to quit.

Lease is ambiguous, and should be construed most strongly against grantor.

If it can be construed as a grant, it should be. *Heyward's case*, 2 *Coke* 35; 4 *Bac. Ab.* 520, *G.*; *Ib.* 526, *I.*

Instrument says "grant"; he grants messuage and the privilege of erecting house on beach.

The grant is for any term Blake may think proper, for consideration of $100, to be laid out in salt works and to be considered two shares of $50 each, the two shares to belong to grantor.

This is followed by warrantee to heirs and assigns. It is a grant for an indeterminate term of years; does not possess the characteristics of a lease.

Lease is for a determinate period, with the recompense of rent. 14 *Pet.* 526—8, *U. States* v. *Gratiot.*

Rent must be reserved out of land or profits of land.

No *reddendum* clause in instrument. 2 *Black. Com.* 41 ; 2 *Thomas' Coke* 439 ; *Woodf. Land. & Ten.* 9 and 11.

When land granted at pleasure of either party, old cases, held that either party might determine it at pleasure. Modern cases hold that it cannot be determined by lessor. 3 *Bos. & Pul.* ; 7 *Vesey* 231 ; 9 *East* 15 ; 5 *Bac. Ao Lease L.*

Here is power for lessee to determine it. 4 *Bac. Ab. Lease L.* 3 ; *Say* v. *Smith*, 1 *Plowd.* 272.

The end must appear by terms of lease.

If a lease, there must be notice. *Den.* v. *Drake*, 2 *Green* 523.

We offered to prove that lessor of plaintiff had said he had sold this land to Moore. Plaintiff must have title. 5 *Texas R.* 582 ; 2 *Stark. Ev.* 22, 3, and 6 ; *Halst. Dig.* 429, § 23.

*Woodhull*, contra.

The main question clearly is on construction of lease from Jeremiah Leeds to Blake.

It should be interpreted according to intent of parties.

The demising clause is in appropriate terms, " demise, grant, and to farm let." 2 *Bl. Com.* 317.

The consideration was to be laid out in salt works. The whole consideration arises out of erection of works ; if not erected, or if work ceased, consideration failed.

Construction of instrument should be reasonable. 2 *Bl. Com.* 379.

The rule, that instrument is to be taken most strongly against grantor, is not to be resorted to till all others fail.

If the lease was determinable on certain contingency, no notice was necessary. 1 *Saund. Pl. & Eve.* 465 and 6 ; 7 *Halst.* 99, *Den.* v. *Adams.*

Parol evidence of sale does not show change of title.

*Browning,* same side.

If this be a lease determinable on happening of certain event, the happening of that event *ipso facto* determines tenancy. *Comyn, Land. and Ten.* 183, 286, (6 *Law L.*)

Instrument however untechnical, the intention is to prevail.

It is a lease or grant of privileges on land. It contemplates estabishment of company, and Leeds to become a member.

Instrument was always called and treated as a lease by all parties, from first to last.

Warranty to heirs cannot enlarge the grant. 3 *Iredell* 379, *Den.* v. *Young ;* 3 *Watts & Serg.* 162, *Moss* v. *Sheldon.*

The *habendum* cannot alter estate. 2 *Bl. Com.* 298 ; 2 *Co. Rep.* 23 ; 8 *Ibid* 56.

The demise is for a term of years. This expression is never found in a grant in fee.

The property was leased for a particular purpose, to be used for the manufacture of salt, with certain other privileges.

The rent depended on the manufacture of salt ; the moment manufacturing ceased the rent ceased.

The lessor never gave up possession further than was necessary to the exercise of the privileges granted ; he had the right to use it for all purposes not inconsistent with the grant.

The time was limited by the purpose of grant ; it was for

so long as grantee might choose to exercise the privileges.

Like the grant of a fishery, the proprietor retaining all control of the land, except so far as necessary to fish.

Defendant had no claim to notice to quit.

*Halsted*, in reply.

The paper is certainly not a lease. 2 *Greenl. Cruise, vol.* 4, *tit.* 32, *ch.* 5, § 1.

"Demise, lease, and to farm let," are appropriate words of lease.

Rule of law is intention of parties, as declared by instrument, must govern construction. *Poole* v. *Bently*, 12 *East* 168.

If the grantee does not determine the estate, it is tantamount to a fee.

The case of *Moss* v. *Sheldon*, 3 *Watts & Serg.* 162, cited by counsel, is directly against him.

The *habendum* may enlarge the estate given. *Thomas Jones' R.* 4, *Pillsworth* v. *Pyatt.*

Language of instrument is peculiar : the grantee is to hold property as long as he thinks proper. Cannot interpolate " as long," &c., " as salt works are carried on."

It is eminently just that in this case notice to quit should be required.

POTTS, J. This was an action of ejectment, brought to recover possession of a tract of land on Absecum beach, in the county of Atlantic. The defendant below, John Horner, to maintain his title to six acres of the tract which he claimed, gave in evidence a certain instrument under seal, executed and acknowledged by Jeremiah Leeds, in the words following :

" This indenture, made the first day of April, eighteen hundred and sixteen, between Jeremiah Leeds, of the one part, and John Blake, of the other part, witnesses that the said Jeremiah Leeds doth demise, grant, and to farm

let, unto the said John Blake, his executors, administrators and assigns, all that messuage and privilege of erecting a salt works on N. E. end of Absecum beach, with the privilege of setting a dwelling house thereon ; also the privilege of pasture for two cows, with what team the works may want, situate, lying, and being in the township of Eggharbor, in the county of Gloucester, and state of New Jersey, with all and singular the appurtenances thereunto belonging, for any term of years the said John Blake may think proper from the above date, for the consideration of the sum of one hundred dollars, to be laid out by the said Blake or his assigns, in the aforesaid salt works, for the use of the said Jeremiah Leeds, which is to be considered as two shares in said works, that is to say fifty dollars per share, it being part of my plantation whereon I now dwell, will warrant and forever defend, at any term or terms of years unto the said John Blake, his heirs, executors, administrators, or assigns, or any of them, to have and to hold the said privileges unto said John Blake, his heirs and assigns shall hold and enjoy the said premises ; without the lawful let or eviction of him, the said Jeremiah Leeds, his heirs executors, administrators, or assigns, or any of them, or any person or persons lawfully claiming by, from, or under them, or any of them, or of the lawful claim of any person or persons, whatsoever, freed and indemnified against all former claims and encumbrances whatsoever, made and committed, or to be made, committed, done, or suffered by the said Jeremiah Leeds, his heirs, or any person or persons having or lawfully claim or to claim, by, from, or under him, them, or any of them.—In witness whereof, the said Jeremiah Leeds has to these presents set his hand and seal, the day and year first above written.

JEREMIAH LEEDS, [L. S.]

Sealed and delivered in the presence of John Daniel.

Her

RACHEL ☒ STEELMAN."

Mark.

The plaintiff claimed title through Jeremiah Leeds, and the defendant through Blake : and the principal questions argued by counsel here were—

1. Whether this instrument was a lease or a conveyance in fee of the land.

2. If a lease, when and how it was determinable ; and—

3. Whether it created such a tenure as required a legal notice to quit before ejectment could be maintained.

The court charged the jury that it was a lease ; that the term expired when the lessees abandoned the manufacture of salt ; and that as such abandonment was their own act, no notice to quit was necessary.

To this instruction of the court the defendant excepted. The verdict was for the plaintiff below.

The instrument, as will be perceived, is very inartificially drawn, contains a good deal of ambiguous phraseology, and was very well characterized at the circuit as " a badly drawn paper." But still I think its meaning can be ascertained with reasonable certainty.

It is a demise of a messuage on the northeast end of Absecum beach, for the purpose, I take it, of erecting salt works thereon, to John Blake, his executors, administrators, and assigns ; and with the privilege of erecting a dwelling house thereon, and pasturage for two cows and such teams as may be required in carrying on the proposed salt works. The words used are " demise, grant, and to farm let," and these are the usual terms by which a lease is made according to the English precedents. *Comyn Land. and Ten.*, 6 *Law Lib.* 34 ; *Woodfall Land. and Ten.* 4 ; though the word grant is not commonly used in our forms of conveyancing when a term of years only is meant to be conveyed. *Oliver*, in his work on conveyancing, 290, adopts the words " demise, lease, and to farm let ;" and in 2 *Graydon's Forms*, 41, 43, we have both " demise, set, and to farm let," and " demise, lease, and to farm let." It is well settled, however, that the words give, grant, lease,

or set are equally proper, and have come to be used indiscriminately in instruments of this character.

The time for which the premises are demised is expressed to be "for any term of years the said Blake may think proper from the above date." This is certainly an unusual limitation of a term. Literally taken, it means that the demise is for a term of years only, but that that term is to run during Blake's pleasure—as long as he thinks proper. If, however, we can gather from the whole instrument the intention of the parties, that intention must govern. Now the object had in view by the parties at the time was the erection of salt works, and the carrying on of the business of manufacturing salt on the premises. Except in the use of the technical words demise, grant, and to farm let, there is nothing in the language of the instrument which indicates an intention that the premises should be used for any other purpose than that of erecting, maintaining, and carrying on the work and business of manufacturing salt, and such other uses as were necessary and incidental to such a business. It is the "privilege" of erecting salt works, the "privilege" of setting a dwelling house on the premises, and the "privilege" of pasturing two cows, with what teams the works may want. The *habendum* is to have and to hold the said "privileges;" and the instrument gives no description of the premises by metes, bounds, or quantity, though there is a description appended to it by way of note or memorandum. Doubtless the demise is of the land, with the privileges; but we are looking for the general intent of the parties.

Then again, when we look for the consideration of the grant, we find that it is an interest in the salt works. As the instrument expresses it, the demise "is for the consideration of the sum of $100, to be laid out by the said Blake, or his assigns, in the aforesaid salt works, for the use of the said Jeremiah Leeds, which is to be considered

as two shares in said works, that is to say $50 per share." The return for the land, therefore, was in substance the dividends of two shares, a portion of the profits of the contemplated business of manufacturing salt.

Was it the intention, the understanding of the parties, that Blake was to have the land, and refuse to erect the works, or carry on the business of manufacturing salt? or hold it longer than he continued the business out of the profits of which the rent was to come? It is like a lease of a fishery for the annual render of a certain share of the fish caught, or a mine for a share of the ore excavated, or a mill site for a share of the profits of a mill to be erected by the tenant. Could the tenant hold the premises and refuse to fish the fishery, or work the mine, or erect the mill, and carry on the business, even though the lease was for such term as the tenant might think proper? I think not.

But it is insisted that the *habendum* in this instrument is to Blake and his heirs, and that this must govern the construction, because it is the office of the *habendum* to determine the quantity of the estate granted. Unfortunately, however, for the argument, it is far from being clear that the *habendum* is to the heirs. The words are, "to have and to hold the said privileges unto the said John Blake : his heirs and assigns shall hold and enjoy the said premises without the let or eviction of him, the said Jeremiah Leeds," &c., &c. All the words following the name John Blake belong to the covenants rather than to the *habendum* clause.

The duration of a term, if not definitely expressed in a lease, may be fixed by reference to collateral or extrinsic circumstances. *Comyns L. and T.*, 6 *Law Lib.* 50. And it was in evidence in this case that a company was organized for the manufacture of salt on the premises immediately after the date of the instrument in question; and that Blake, for a small consideration, forthwith assigned

all his right to the premises to this company for the purpose of a salt works, and for as long as the company might choose, reciting this instrument in his said assignment as a lease from Leeds.

Upon the whole, I am of opinion that this instrument must be taken to be a lease for so long a term as the lessees should use the premises for the purpose of manufacturing salt, and no longer; that such was the intention of the parties, as is fairly deducible from the whole instrument: that it is the only reasonable construction which can be given to it; and that it is a construction in accordance with the subsequent conduct of the parties and their successors, &c.

If this is so, the lease was for a term determinable upon the happening of a certain event, to wit, the abandonment of the manufacture of salt by the lessees: and as that abandonment was their own act, they were not entitled to notice to quit. *Comyn* 285; 6 *Law Lib.* 160; *Right* v. *Darby,* 1 *Durn. & East* 162; *Den* v. *Adams,* 7 *Halst.* 101.

There was, therefore, no error in the charge of the court.

Two other exceptions were taken in the course of the trial. The first was to the admission of certain deeds in evidence, forming part of the plaintiff's chain of title. These deeds are not before the court, nor does the ground of objection to them appear; but inasmuch as the defendant subsequently set up the above mentioned lease from Leeds, he precluded himself from taking advantage of any defect of this sort, for a tenant is not permitted to deny the title of him under whom he claims.

The second exception was to the ruling of the court, refusing to admit evidence, offered by the defendant, of an alleged declaration of the lessor of the plaintiff, that he had sold the premises. It is true that a tenant may show, in an action of ejectment by the landlord, that the landlord's title has expired, or that he has sold his interest in the premises. 2 *Greenl. Ev.* § 305.

But I am not aware that it has ever been held that this may be shown by merely producing a witness to swear that the lessor of the plaintiff told him he had sold. To let in loose evidence of this description might work serious mischief.

The judgment below should be affirmed.

CHIEF JUSTICE and OGDEN, J., concurred.